**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MATTHEW GARY SHULTZ,

Plaintiff,

v. Case No: 6:25-cv-918-LHP

DUSTIN MUELLER, SMITH PREDELUS and CITY OF ORLANDO,

Defendants

---

# ORDER[1]

On March 27, 2026, the Court dismissed without prejudice *pro se* Plaintiff Matthew Gary Shultz's First Amended Complaint (Doc. No. 70), and provided Plaintiff with one final opportunity to file an amended pleading. Doc. No. 75. Plaintiff timely-filed his Second Amended Complaint ("SAC") on April 15, 2026 (Doc. No. 77), to which Defendants Dustin Mueller ("Mueller"), Smith Predelus ("Predelus"), and the City of Orlando ("the City") have filed a joint motion to dismiss (Doc. No. 79). Plaintiff never responded to the motion, thus the Court

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge and the Inexpensive Determination, Efficient, and Abbreviated Litigation (IDEAL) Program. Doc. Nos. 59, 60.

deems the motion unopposed in all respects. *See* Local Rule 3.01(d). For the reasons that follow, the motion (Doc. No. 79) is due to be granted, and Plaintiff's SAC will be dismissed in its entirety without further leave to amend.

## I. BACKGROUND.

Plaintiff first filed suit against Defendants on May 27, 2025, relating to a September 12, 2021 incident where Defendants Mueller and Predelus, both officers with the Orlando Police Department, responded to a domestic violence call and arrested Plaintiff and seized his firearms. Doc. No. 1. Defendants moved to dismiss (Doc. Nos. 35, 41, 45), which the Court denied as moot on October 23, 2025, and *sua sponte* granted Plaintiff leave to file an amended complaint. Doc. No. 69.

Plaintiff thereafter timely filed his First Amended Complaint on November 3, 2025, asserting claims under 42 U.S.C. § 1983 related to the September 12, 2021 incident for false arrest and excessive force, due process and equal protection violations, a violation of his Second Amendment rights, and several municipal liability claims against the City of Orlando pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Doc. No. 70. Defendants again moved to dismiss (Doc. No. 71), and Plaintiff filed a response in opposition, in which he alternatively requested leave to amend. Doc. No. 72.

On March 27, 2026, the Court granted in part Defendants' motion to dismiss (Doc. No. 71), dismissed Plaintiff's First Amended Complaint as a shotgun

pleading, and provided Plaintiff with one final opportunity to file an amended pleading "to assert claims that comply with all pleading requirements and assert plausible claims for relief." Doc. No. 75, at 10. The Court also provided Plaintiff detailed guidance on the facts that must be sufficiently alleged to plausibly establish claims under 42 U.S.C. § 1983 for false arrest, excessive force, municipal liability, equal protection and due process violations, First Amendment retaliation, and to overcome qualified immunity. *Id.* at 10-15. The Court also explained to Plaintiff that there is no cognizable claim for a violation of the Second Amendment's right to bear arms. *Id.* at 14-15.

Plaintiff filed his SAC on April 15, 2026. Doc. No. 77. Plaintiff now asserts four (4) claims against Defendants, all under 42 U.S.C. § 1983: (1) false arrest in violation of the Fourth Amendment against Defendants Mueller and Predelus (Count I); (2) a Fourteenth Amendment due process violation against the City related to the return of his seized firearms (Count II); (3) a claim against the City for violation of Plaintiff's Second Amendment right to possess a firearm (Count III); and (4) a *Monell* municipal liability claim against the City for failure to train, supervise, and provide procedures for return of property (Count IV). *Id.* To support these claims, Plaintiff alleges the following facts:

> 8. On September 12, 2021, Plaintiff was involved in a domestic dispute in which he was the victim.
> 9. Plaintiff had visible injuries, including scratches and redness, observable at the scene.

10. Officers Mueller and Predelus failed to reasonably investigate the incident.
11. Upon information and belief, Defendant Smith Predelus was the subject of Internal Investigation IR 22-14, which resulted in sustained findings for use of force and conduct toward the public.
12. Officers ignored exculpatory evidence and arrested Plaintiff without probable cause.
13. No reasonable officer would have concluded probable cause existed.
14. Charges were later dismissed.
15. The City seized Plaintiffs firearms.
16. After dismissal of charges, Plaintiff requested their return.
17. Plaintiff was required to request a hearing before the firearms were returned.
18. The delay occurred without timely notice or adequate procedural safeguards.

Doc. No. 77, at 2-3. In terms of relief, Plaintiff seeks an unspecified amount of compensatory damages, punitive damages, costs, and attorney's fees. *Id.* at 4, 5.

On May 5, 2026, Defendants jointly moved to dismiss the SAC, to which Plaintiff has failed to respond. Doc. No. 79. With the motion now ripe, this Order follows.

## II. LEGAL STANDARD.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Rule 10 of the Federal Rules of Civil Procedure requires that each claim be separated into

separate counts and supported by distinct factual allegations." *Bagley v. City of Tampa*, No. 8:07-cv-218-T-27EAJ, 2007 WL 9723949, at *1 (M.D. Fla. Sept. 19, 2007) (citing Fed. R. Civ. P. 10(b)). Although a court must accept as true well pleaded allegations, it is not bound to accept a legal conclusion couched as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Further, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

These requirements apply to *pro se* litigants, although courts give a "liberal construction" to *pro se* pleadings. *Holsomback v. White*, 133 F.3d 1382, 1386 (11th Cir. 1998). But this leeway is not limitless, as courts cannot serve as "*de facto* counsel for a party, or . . . rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014)

(citation omitted). *See also Gilmore v. Hodges*, 738 F.3d 266, 281 (11th Cir. 2013) ("[L]iberal construction is not the same thing as wholesale redrafting."). *Pro se* parties must comply with the minimum pleading standards set forth in the Federal Rules of Civil Procedure and the Local Rules. *Nawab v. LVNV Funding LLC*, Case No. 5:12-cv-129-Oc-10PRL, 2012 WL 12918283, at *1 (M.D. Fla. Nov. 19, 2012).

## III. ANALYSIS.

### A. *Shotgun Pleading*.

Defendants first argue that Plaintiff's SAC remains a shotgun pleading because it does not incorporate any of the facts alleged into any of the four claims, and because Plaintiff does not clearly identify which claim is asserted against which Defendant. Doc. No. 79, at 4-6. *See also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (identifying the four types of impermissible "shotgun pleadings," including where a complaint contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," or contains "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."). Upon review, the Court disagrees.

Unlike prior iterations, Plaintiff's SAC lists each factual allegation and each claim in separately numbered paragraphs, in compliance with Rule 10. And while Plaintiff does not identify in the caption of each claim which Defendant the claim is brought against, the allegations underneath each claim make clear that Count I is against both Mueller and Predelus, and Counts II-IV are against the City. *See, e.g.*, Doc. No. 77 at ¶¶ 19, 24, 26, 29, 31, 33. And while Plaintiff does not specifically incorporate the sparse factual allegations into each claim, it is clear that Count I relates to Plaintiff's arrest, and Counts II through IV relate to the seizure of Plaintiff's firearms. *See, e.g., id.* at ¶¶ 19-21, 23-27, 28-30, 32. Further, as demonstrated by the pending joint motion to dismiss, each Defendant was clearly on notice of the claims brought against them and was able to raise arguments in defense of the claims. Doc. No. 79. As such, the Court will not dismiss the SAC on the basis of shotgun pleading. *See Weiland*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (noting that the "unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."); *see also Bunck v. King*, No. 2:10-cv-735, 2013 WL 12146523, at *2 (M.D. Fla. Mar. 4, 2013), *aff'd*, 530 F. App'x 905 (11th Cir. 2013) ("Although certainly not a model of clarity, the Third Amended Complaint is not a 'shotgun pleading.' A shotgun pleading is 'unintelligible, indecipherable, and replete with irrelevant facts, making it impossible for the

defendants to know what [the plaintiff] is claiming, against whom, and on what grounds.' In the Third Amended Complaint, Plaintiffs make an effort to separate out their allegations as to each Defendant and each cause of action. . ." (citation omitted)).

*B. Count I – False Arrest.*

Defendants next argue that Plaintiff has failed to plausibly allege a claim for false arrest against Mueller and Predelus and, in particular, that Mueller and Predelus are entitled to qualified immunity. Doc. No. 79, at 7-11.

"Qualified immunity provides protection for government officials performing discretionary functions and sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Brannon v. Finkelstein*, 754 F.3d 1269, 1278 (11th Cir. 2014) (quoting *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003)). There is no dispute that Mueller and Predelus were performing discretionary functions when they arrested Plaintiff. *See Bercini v. City of Orlando*, No. 6:15-cv-1921-Orl-41TBS, 2016 WL 11448994, at *3 (M.D. Fla. Sept. 30, 2016) ("[A]n officer making an arrest is acting within his discretionary duty." (citing *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004))). Accordingly, in order to ascertain whether the qualified immunity defense applies to this case, the Court must determine: "(1) whether the facts alleged make out a violation of a

constitutional right; and (2) whether that right was 'clearly established' at the time of the alleged misconduct." *Bratt v. Genovese*, No. 8:13-cv-3210-T-36AEP, 2015 WL 12835684, at *3 (M.D. Fla. Nov. 23, 2015), *aff'd*, 660 F. App'x 837 (11th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Defendants focus on the first prong – whether Plaintiff has alleged facts sufficient to make out a violation of a constitutional right. Doc. No. 79, at 8-11.[2] Liberally construing the SAC, Plaintiff alleges that Mueller and Predelus lacked probable cause to arrest him because they (1) failed to reasonably investigate the September 12, 2021 incident, including that Plaintiff was the victim; (2) ignored clearly exculpatory evidence, including Plaintiff's visible injuries; and (3) the charges against Plaintiff were ultimately dismissed. Doc. No. 77 ¶¶ 8-10, 12, 14, 19-22.[3] However, as Defendants correctly point out, none of these facts, taken as true, are sufficient to allege that Plaintiff's Fourth Amendment rights were violated.

---

[2] With respect to the second prong, the law is clear that "[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)); *see also Medley v. City of Orlando*, No. 6:08-cv-1456-Orl-18DAB, 2009 WL 10706233, at *6 (M.D. Fla. Jan. 12, 2009) ("[I]t is clearly-established that an arrest made without probable cause violates the Fourth Amendment." (citation and internal quotation marks omitted)). However, as discussed herein, Plaintiff has not plausibly alleged any Fourth Amendment violations.

[3] Plaintiff mentions an "Internal Investigation IR 22-14" against Predelus "which resulted in sustained findings for use of force and conduct toward the public," but nowhere explains how this allegation relates to his arrest. Doc. No. 77 ¶ 11. Nor has Plaintiff alleged a claim for excessive force. Thus, the Court does not consider this allegation further.

*See Davis v. City of Apopka*, 78 F.4th 1326, 1343 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 2528 (2024) (affirming dismissal of § 1983 false arrest claim based on a failure to allege a lack of probable cause where plaintiff alleged that his "injuries were exculpatory evidence that the officers ignored," because such injuries "do not rule out probable cause," as they could both be used to paint the plaintiff as a victim or be inculpatory evidence that the plaintiff was the aggressor, and in any event "even where officers see or hear some exculpatory evidence, the fact that they still conclude probable cause exists does not mean they ignored or turned a blind eye or deaf ear to the exculpatory evidence."); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself."); *Wymer v. Baxter*, No. 6:15-cv-1669-Orl-37DAB, 2015 WL 7731406, at *6 (M.D. Fla. Nov. 4, 2015), *report and recommendation adopted*, No. 6:15-cv-1669-Orl-37DAB, 2015 WL 7721330 (M.D. Fla. Nov. 30, 2015) (*sua sponte* dismissing *pro se* complaint and holding that "Plaintiff cannot state a claim on the theory that 'he was treated like nothing' when 'he was the real victim' and [the officer] should have believed his version of events over the statements of [the alleged victim]. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." (internal citation and quotations omitted)).

Plaintiff provides no other facts to suggest that his arrest was unlawful, beyond conclusory assertions that there was no probable cause, which is not enough to survive dismissal. Doc. No. 77 ¶¶ 13, 19, 21-22. *See also Brivik v. L.*, 545 F. App'x 804, 806 (11th Cir. 2013) (conclusory allegation that officer "performed a reckless investigation that ultimately led to his wrongful arrest and incarceration" insufficient to demonstrate that officers lacked probable cause, or arguable probable cause, for the arrest).[4] Nor has Plaintiff made any argument in response to Defendants' motion, arguably leading to the conclusion that he has abandoned his claims. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. Also, when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (alterations adopted) (citations omitted)). Thus, in the absence of any other factual allegations or argument to the contrary, the Court finds that Count I is due to be dismissed. *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) ("Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." (citations and internal quotation marks omitted)).

---

[4] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

*C. Count II – Due Process Violation*.

In Count II, Plaintiff alleges that he was deprived of his property interest in his firearms without due process because the City retained his seized firearms after all charges against him were dismissed, Plaintiff was forced to seek a hearing to recover his property, and the City "failed to provide timely and adequate procedures." Doc. No. 77 ¶¶ 15-18, 23-27. Defendants contend that these allegations are insufficient to state a plausible claim for relief in that they are both conclusory, and because they fail to demonstrate that the available state law remedies – in this case a hearing – were inadequate. Doc. No. 79, at 11-13. The Court agrees.

As the Court previously explained to Plaintiff, to allege a procedural due process claim, he must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Chen v. Lester*, No. 6:08-cv-1954-Orl-22GJK, 2009 WL 10698631, at *14 (M.D. Fla. Mar. 19, 2009) (citation and internal quotation marks omitted omitted). Thus, "[i]t is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). But, as Defendants correctly point out, other than the conclusory allegations previously identified, Plaintiff provides no facts to support his assertion

that he was denied any due process or that the procedures utilized to recover his firearms – a hearing – were neither timely nor adequate. And again, Plaintiff has not made any argument in response to Defendants' motion as to this claim.

Accordingly, the Court will dismiss Count II. *See Bishop v. City of Boynton Beach*, No. 25-cv-80606, 2026 WL 229410, at *3 (S.D. Fla. Jan. 15, 2026), *report and recommendation adopted sub nom. Bishop v. Harper*, No. 25-cv-80606-WPD, 2026 WL 222565 (S.D. Fla. Jan. 28, 2026) (dismissing as insufficiently pled a procedural due process claim for deprivation of a protected property interest where plaintiff "solely provided threadbare recitals of the elements of the cause of action, which are more conclusory than factual."). *See also Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (plaintiffs "failed to state a valid procedural due process claim because they have not alleged that [state] law provided them with an inadequate post-deprivation remedy."); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) ("Even assuming the continued retention of plaintiffs' personal property is wrongful, no procedural due process violation has occurred if a meaningful post-deprivation remedy for the loss is available." (citation and internal quotation marks omitted)); *Barker v. Sheldon*, No. 209-cv-701-FtM-29SPC, 2010 WL 672767, at *4 (M.D. Fla. Feb. 23, 2010) ("Plaintiff cannot allege an inadequate post-deprivation process because Plaintiff's claim regarding any loss of or destruction to his personal property may be raised in a tort action under Florida state law." (citing Fla. Stat. § 768.28)).

*D. Count III – Second Amendment Violation.*

In Count III, Plaintiff alleges that the City's continued retention of his seized firearms "burdened" his constitutional right to possess a firearm, and that the delay in returning his firearms "was not justified by any lawful basis." Doc. No. 77 ¶¶ 28-30. However, as the City argues (Doc. No. 79, at 14-15), and as the Court previously pointed out to Plaintiff (Doc. No. 75, at 14-15), "there is no cognizable cause of action by a gun owner against a government agency or employee for [violations of the right to bear arms]." *Raymond v. Hillsborough Cnty., Fla.*, No. 8:24-cv-1404-TPB-CPT, 2024 WL 4792016, at *4 (M.D. Fla. Nov. 14, 2024), *aff'd*, No. 24-14124, 2025 WL 2409096 (11th Cir. Aug. 20, 2025). *See also Blidge v. Ferguson*, No. 4:24-cv-00131, 2026 WL 852132, at *7 (S.D. Ga. Mar. 27, 2026) (finding that § 1983 does not provide a cause of action for retaliation under the Second Amendment); *Howe v. City of Enter., Al.*, No. 1:15-cv-113-JA-SRW, 2018 WL 8545947, at *33-34 (M.D. Ala. Sept. 17, 2018), *report and recommendation adopted*, No. 1:15-cv-113-ECM, 2019 WL 8723922 (M.D. Ala. Mar. 12, 2019) (rejecting claim of second amendment violation where individual officer disarmed plaintiff during investigation at plaintiff's home). Plaintiff cites to no legal authority suggesting that he has alleged a viable claim for relief, has not alleged any facts or made any argument that the City could be held vicariously liable in this regard, and has not otherwise opposed dismissal of this claim. Count III will be dismissed.

*E. Count IV – Monell Liability.*

Plaintiff's fourth and final claim is also against the City, and alleges, again in conclusory fashion, that the City maintained policies or customs relating to the failure to train, supervise, and provide procedures for the return of property. Doc. No. 77 ¶¶ 31-32. Plaintiff also points to an unexplained "prior sustained Internal Affairs findings" as proof of the City's deliberate indifference to the need for better training and supervision. *Id.* ¶ 34. Defendants seek dismissal of this claim on the grounds that the allegations are wholly conclusory, and because Plaintiff fails to identify any policy, custom, or practice that caused any violation of Plaintiff's constitutional rights. Doc. No. 79, at 15-17. Plaintiff makes no argument in opposition.

Upon consideration, the Court again agrees with Defendants. Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. In order to plausibly allege a claim for *Monell* liability, Plaintiff "must ultimately prove that [the City] had a policy, custom, or practice that caused the deprivation." *Hoefling v. City of Miami*, 811 F.3d 1271,

1279 (11th Cir. 2016) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "A 'policy' includes decisions of [the municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. A 'custom' includes a practice that has not been formally approved by an appropriate decisionmaker but that may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Greer v. Ivey*, No. 6:15-cv-677-Orl-41GJK, 2016 WL 11464648, at *4 (M.D. Fla. July 18, 2016) (alterations in original) (citations and internal quotation marks omitted). Moreover, "[t]he official policy or custom 'must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983.'" *Skyles v. McCoy*, No. 6:16-cv-1968-Orl-37TBS, 2017 WL 1322071, at *5 (M.D. Fla. Apr. 7, 2017) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

Here, Plaintiff only makes generic references to a failure to train, supervise, or provide procedures for the return of property, nothing more. He provides no factual allegations even suggesting that the City has any policy, custom, or practice of not returning – or delaying the return – of any seized property. Rather, all of his allegations are broad and conclusory in nature, which is insufficient. *See, e.g.*, *Gurrera v, Palm Beach Cnty. Sheriff's Ofc.*, 657 F. App'x 886, 893 (11th Cir. 2016) (finding that conclusory allegations that there was a "pattern . . . of obtaining coerced and false statements," and "a pattern and practice of engaging in false

arrests, imprisonment, [and] false prosecution" failed to state a claim under *Monell* (alterations in original)); *Skyles*, 2017 WL 1322071, at *6 ("Plaintiff has made wholly conclusory statements that the City "fail[ed] to promulgate reasonable policies and procedures among [its] officers for the use of force," and that such failure "was excessive and unreasonable" and "was done intentionally, willfully, [and] maliciously . . ." (alterations in original)).

At most, Plaintiff relies upon the facts – to the extent any are alleged – relating to the seizure of his own firearms. As such, Plaintiff has failed to allege "a widespread policy of the relevant constitutional violations and that the prior conduct is sufficiently similar." *Guarda v. City of Melbourne, Fla.*, No. 6:17-cv-756-Orl-37TBS, 2017 WL 3034071, at *3 (M.D. Fla. July 18, 2017); *see also Weiland*, 792 F.3d at 1329–30 (affirming dismissal of custom, policy, and practice claim where the only facts alleged in support of the claim were about the individual defendant officers' own conduct along with conclusory allegations of a practice of covering up excessive force against the mentally ill); *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011) (plaintiff failed to establish an unconstitutional custom or policy sufficient to impose municipal liability when he relied only on his own experience).

Plaintiff's attempts to cast Count IV as a claim for inadequate training and supervision also fails. "In limited circumstances, a municipality's failure to train its employees may rise to the level of an official government policy for purposes of

§ 1983." *Guarda*, 2017 WL 3034071, at *2 (citations omitted). The failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "Deliberate indifference is a stringent standard." *Id.* (quoting *Connick*, 563 U.S. at 61); *see also Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994) ("[O]nly if, 'in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' can a municipality reasonably 'be said to have been deliberately indifferent to that need.'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989))). "Ultimately . . . a municipality cannot be held liable under § 1983 for conduct of which its officials were unaware; instead, the plaintiff must show that municipal officials had actual or constructive knowledge of the misconduct, but that they failed to take corrective action." *Johnson v. City of Daytona Beach*, No. 6:16-cv-941-Orl-40TBS, 2017 WL 119744, at *5 (M.D. Fla. Jan. 12, 2017) (citing *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986)).

Plaintiff does not elaborate on how the City failed to implement any certain training policy, or how the City's failure to train law enforcement resulted in a related unconstitutional policy application in his case or in any other cases where firearms are seized in connection with an arrest. Plaintiff also fails to provide any factual allegations demonstrating that the City had actual or constructive

knowledge that police officers were seizing firearms and delaying their return (to the extent such an action would constitute a constitutional violation). Thus, Count IV is insufficiently pled to survive a motion to dismiss. *See, e.g.*, *Guarda*, 2017 WL 3034071, at *3 ("[T]he Complaint does not identify a particular omission in the City's training program. Rather, Plaintiff points to the City's policies and training generally. In addition, Plaintiff relies on imprecise and conclusory allegations . . . which do not approach the requisite pleading of a pattern of similar constitutional violations."). Count IV is therefore also due to be dismissed.

## IV. CONCLUSION.

For the foregoing reasons, it is **ORDERED** as follows:

1. Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 79) is **GRANTED**.

2. Plaintiff's Second Amended Complaint is **DISMISSED without further leave to amend.**[5]

---

[5] Eleventh Circuit precedent "does not require affording *pro se* plaintiffs multiple opportunities to amend." *Gurrera*, 657 F. App'x at 894; *see also Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 673 (11th Cir. 2016) ("[O]ur case law does not require a district court to give a *pro se* litigant multiple opportunities to amend"). The Court has already provided Plaintiff two prior chances to allege plausible claims for relief, which included detailed guidance regarding pleading standards and the elements of each of his claims. Doc. Nos. 69, 75. And by his failure to respond to Defendants' motion, Plaintiff has arguably abandoned his case. *See Jones*, 564 F. App'x at 434. Accordingly, dismissal without leave to amend is warranted.

3. The Clerk is **DIRECTED** to terminate all other pending motions and close the file.

4. The Clerk is **FURTHER DIRECTED** to place Plaintiff's contact information as set forth in Doc. No. 82 on the docket, and to ensure that Plaintiff receives a copy of this Order via electronic filing as required by the Court's October 1, 2025 Order (Doc. No. 58).[6]

**DONE** and **ORDERED** in Orlando, Florida on August 25, 2026.

Leslie Hoffman Price

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[6] The Court notes Plaintiff's request to seal his address (Doc. No. 82), which the Court now finds moot based on the rulings in this Order. In any event, Plaintiff's motion does not satisfy the requirements for sealing as set forth in Local Rule 1.11, and in particular provides no explanation for why sealing is necessary.